UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

WALTER H. VAN BUREN, et al.,

                Plaintiffs,

v.                                 **DECISION AND ORDER**
                                         10-CV-701S

CARGILL, INC.,

                Defendant.

## I. INTRODUCTION

Before this Court are the parties' cross motions to vacate and confirm the arbitration award. (Docket Nos. 32, 37.)[1] This Court previously referred this case to Magistrate Judge Hugh B. Scott for the issuance of a Report and Recommendation on dispositive motions. (Docket No. 33.) This Court now vacates that referral order and, for the reasons stated below, denies Plaintiffs' motion to vacate the arbitration award (Docket No. 32) and grants Defendant's cross-motion to confirm the award (Docket No. 37).

## II. BACKGROUND

Plaintiffs Walter Van Buren, Verne Van Buren, and Van Buren Farms (referred to collectively as "Plaintiffs"), used a hay treatment product ("Bale Green") manufactured and sold to Plaintiffs by Cargill ("Cargill" or "Defendant"). Plaintiffs allege that after applying Bale Green in accordance with instructions provided by Cargill representatives,

---

[1] In connection with Plaintiffs' motion to vacate the arbitration award, they submit an Attorney Affidavit (Docket No. 32-1), Memorandum of Support (Docket No. 32-2), and appended Exhibits A-FF. (Docket Nos. 32-3 to 32-5.) In opposition, Defendant submits an Attorney Declaration (Docket No. 37-1), Memorandum of Support (Docket No. 37-10), and appended Exhibits A-F. (Docket Nos. 37-2 to 37-9.)

stacked bales of hay collapsed on Walter Van Buren, causing him serious injury. Plaintiffs aver that product defects and/or erroneous application instructions are to blame for both the hay bales treated with Bale Green becoming unstable and the collapse of the bale stacks.

Plaintiffs commenced this action in New York State court asserting various claims for, *inter alia*, breach of contract, breach of warranty, fraudulent misrepresentation, and negligence relating to the Plaintiffs' purchase of Bale Green from Defendant. The matter was removed to this Court on August 23, 2010. (Docket No. 1.)

On October 26, 2010, Defendant moved to stay the litigation pending arbitration before the National Grain and Feed Association ("NGFA"), as contemplated by the written agreement between the two parties (Docket No. 10). Plaintiffs opposed the motion on the ground that the subject matter of their claims was not within the scope of the arbitration clause. (Docket No. 14 at 9.)

Magistrate Judge Scott issued a Report and Recommendation finding that Plaintiffs' claims were subject to arbitration under the broad language of the arbitration provision, and noted that Plaintiffs did not articulate any challenge to the validity of the arbitration agreement or the structure of the NGFA arbitration process itself. (Docket No. 16 at 10-11.) Plaintiffs did not file objections to the Report and Recommendation, which this Court adopted on September 2, 2011. (Docket No. 17.)

**A.   Arbitration Proceedings**

On November 30, 2011, Plaintiffs executed the NGFA Arbitration Services Contract (the "Services Contract"), which provided that "[t]he parties agree to comply

2

with all NGFA Arbitration Rules, including, but not limited to, those rules requiring the parties to advance approximate expenses when an oral hearing is requested." (Pl. Ex. I, Docket No. 32-3 at 124.) The Services Contract further provided that "[t]he parties further agree to abide by the decision reached in this case and that the decision shall be final, subject to NGFA Arbitration Rules relating to appeals." (Id.)

The arbitration was fully submitted upon filing of Defendant's sur-rebuttal on July 5, 2012. By letter dated July 18, 2012, the NGFA provided Plaintiffs with a copy of the sur-rebuttal and notified them that the parties would be contacted upon appointment of the Arbitration Committee. (Def. Ex. A, Docket No. 37-2.)

On October 3, 2012, the NGFA apprised the parties by letter that the following Arbitration Committee had been appointed: (1) Chairperson, Matthew Gibson, Vice President Marketing and Tech Services, Lifeline Foods LLC, St. Joseph, MO; (2) John Brammeier, Grain Division Manager, Co-Alliance LLP, Avon, IN; and (3) Steve Dennis, Grain Department Manager, Evergreen FS Inc., Bloomington, IL. The letter further reminded the parties that, pursuant to Section 8(a) of the Arbitration Rules, either party may challenge the appointment of a member of the Arbitration Committee for prejudicial or other causes within five (5) days of receipt of the notice.  Plaintiffs did not object to the arbitrators selected by the NGFA. (Pl. Ex. J, Docket No. 32-3 at 127.)

The NGFA Arbitration Committee issued its Decision on June 20, 2013, ruling in favor of Cargill. (Pl. Ex. K, Docket No. 32-3, at 129-132.) The Committee's Decision was based on the following conclusions: (1) both parties acknowledged that the product was not used as directed and intended according to the instructions on the label of the product – this was the reasonable, and more likely, explanation of any loss to the quality

of the hay; (2) the Plaintiffs were "sophisticated producers" who failed to follow directions on the product labeling; (3) Plaintiffs did not provide credible evidence to support their assertion that Bale Green caused structural damage that would have resulted in a collapse of hay as alleged by the Plaintiffs; (4) the claim that Cargill's product caused structural damage to the hay, which then caused the hay to collapse upon Walter Van Buren, was entirely unsubstantiated and Cargill's account of what transpired between the parties was better supported and appeared more plausible; and (5) Cargill's claim for payment on the product was substantiated. (Id.)

**B.     NGFA Appeal Process**

Plaintiffs filed a Notice of Appeal with the NGFA on July 5, 2013. (Pl. Ex. L, Docket No. 32-3 at 134.) Plaintiffs paid the fees required pursuant to Section 9 of the NGFA Arbitration Rules without objection and requested oral argument pursuant to Section 9(h) of those rules. In their Notice of Appeal, Plaintiffs challenged the qualifications of the original Arbitration Committee, the time in which it took the Committee to render a decision, the admission and evaluation of certain evidence, and the Committee's failure to apply New York common law and Uniform Commercial Code with regard to a buyer's incidental and consequential damages. (Id. at 137-142.)

On July 17, 2013, the NGFA confirmed Plaintiffs' request for oral argument and, pursuant to NGFA Arbitration Rule 9(i), informed Plaintiffs of the additional expenses to be attributed to them as a result of their request for oral argument. (Pl. Ex. M, Docket No. 32-3 at 146.) The parties were also provided with a set of procedures and stipulations to review in advance of the argument. (Id. at 147-148.)

On November 14, 2013, the NGFA provided counsel for the parties with notice that an Arbitration Appeals Committee (the "Appeals Committee") had been appointed. The Appeals Committee consisted of: (1) Chairperson, Roger Krueger, Vice President, Grain Marketing, South Dakota Wheat Growers Association, Aberdeen, SD; (2) Jeff Berdan, Ruminant and Forage Specialist, Purina Animal Nutrition LLC, New Ulm, MN; (3) Joan Maclin, Senior Vice President & General Counsel, The Scoular Company, Minneapolis, MN; (4) Steven Nail, President & CEO, Farmers Grain Terminal, Inc., Greenville, MS; and (5) Steve Young, Grain Merchandiser, Grainland Cooperative, Holyoke, CO. (Pl. Ex. P, Docket No. 32-3 at 155.) As with the composition of the initial Arbitration Committee, the NGFA advised the parties that they could challenge the composition of the Appeals Committee "for prejudicial or other causes," if such challenge was made within five (5) days from the date of the letter. (Id.)

On November 25, 2013, Plaintiffs contacted the NGFA, requesting additional information regarding the Appeals Committee members. (Pl. Ex. Q, Docket No. 32-3, at 157-158.) Plaintiffs did not object to any member of the Appeals Committee, or to the panel as a whole. (Id.) The NGFA responded by letter on December 2 informing Plaintiffs' counsel, among other things: (a) that specific efforts were made to include Appeals Committee members with agricultural commodities experience and knowledge; (b) that four members of the Appeals Committee were employed with farmer-owned cooperatives; (c) that none of the members appointed to the Committee had made disclosures of circumstances that might affect their impartiality, and that the NGFA was likewise not aware of any such circumstances; and (d) that the Committee members do not receive monetary compensation of any kind from any source (including NGFA itself),

except for reimbursement of out-of-pocket expenses when a hearing is conducted. (Pl. Ex. R, Docket No. 32-3 at 160-161.) Plaintiffs did not respond to the NGFA's letter.

On December 23, 2013, Plaintiffs submitted the required fee of $12,500 for oral argument of their appeal. In their cover letter, Plaintiffs objected to paying the entire fee for the appeal, but otherwise raised no objection to the panel or to the NGFA arbitration process. Specifically, Plaintiffs' letter stated, "Please note that these funds are being provided under protest, with a reservation of all rights, based upon our client's objection to payment of the total expenses of the oral hearing without contribution from the respondent, despite respondent's equal opportunity to participate in the oral hearing." (Pl. Ex. T, Docket No. 32-3 at 165.)

Oral argument was held on October 29, 2014. (Pl. Ex. FF, Docket No. 32-4 at 69-228.) Immediately before the argument, the parties were asked to agree to the stipulations that had been provided to the parties in advance, including the stipulation that "[t]he procedures and terms governing this proceeding provided by the NGFA secretary to the parties are accepted without reservation." In response, Plaintiffs' counsel stated, "My only concern when that statement says 'without qualification' is that we had initially challenged the appropriateness of the arbitration vis-à-vis the lawsuit that we had filed. Given that as background, other than that, then [stipulation number] five is acceptable." (Pl. Ex. FF, Docket No. 32-4 at 76-77.)

At the conclusion of the appellate argument, Plaintiffs' counsel was asked if he had any concerns with the Appeals Committee panel that was assigned to hear the case. He responded, "No, this is to me – you know, I'm prejudiced. I'm a lawyer. And there are a lot of legal principles involved. And on the other hand you get the same thing

with a jury. You have – jurors are not lawyers and they do justice. It works well. We've been doing it in this country for a lot of years. So we're fine." (Id. at 200.)

**C.     Appeals Committee Determination**

The Appeals Committee issued its decision on February 12, 2015. (Pl. Ex. Y, Docket No. 32-3 at 186-187.) In affirming the Decision and Award of the Arbitration Committee, the Appeals Committee summarized its findings as follows:

> Many of the material facts are disputed, requiring the Committee to focus on the fact that the plaintiffs bear the burden of proof. Clearly, Walter Van Buren was seriously injured when the stacked hay bales fell on him. However, much less clear is what factors caused instability in the bale stack and the ultimate collapse. Accordingly, the Committee needed to ascertain whether there was adequate support in the case record to conclude that 1) the product was defective *and* the defects in the product caused the hay to weaken sufficiently to result in the collapse of the bale stack; or 2) misapplication of the product caused the hay to weaken sufficiently to result in the collapse of the bale stack and the misapplication was the result of following application instructions supplied by a Cargill representative. Although the plaintiffs' claim for product loss based upon quality deterioration was much less than the personal injuries claim, the Committee likewise needed to determine if the evidence was sufficient to conclude that the quality loss resulted from defects in the Bale Green product and/or from Cargill's application instructions.
>
> Given the facts that are disputed as well as ample evidence of potential other contributing causes, the Arbitration Appeals Committee was not able to conclude, based upon a preponderance of the evidence, that the defendant's product or conduct resulted in the plaintiffs' losses related to personal injury or quality loss.

(Id., emphasis in original.)

**D.     The Instant Motion**

Plaintiffs now move to vacate the arbitration award on the following grounds: (1) the NGFA was inherently biased in favor of Cargill; (2) the NGFA arbitrators and Appeals Committee were unqualified to hear Plaintiffs' claims; (3) the NGFA arbitrators and Appeals Committee failed to render expeditious decisions; (4) there was no legal basis for the decisions of the NGFA arbitrators and Appeals Committee; and (5) the NGFA arbitration system is cost-prohibitive. (Pl. Mem. at 3-18.)

Defendant cross-moves to confirm the award, arguing that Plaintiffs have not set forth a legal or factual basis to set aside the award. (Def. Mem. at 10-25.)

Having considered the parties' written submissions and the applicable law, this Court denies Plaintiffs' motion to vacate the arbitration award, and grants Defendant's cross-motion to confirm it.

### III. DISCUSSION

**A.     Standard of Review**

Judicial review of arbitration awards is "very limited." <u>Willemijn Houdstermaatschappij, BV v. Standard Microsys. Corp.</u>, 103 F.3d 9, 12 (2d Cir. 1997) (internal quotation marks omitted). The Federal Arbitration Act ("FAA") permits *vacatur* of an arbitral award where there was evident partiality in the arbitrators; where the arbitrators were guilty of misconduct in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been prejudiced; or where the arbitrators exceeded their powers. 9 U.S.C. § 10(a)(2)-(4).

Misconduct warranting *vacatur* pursuant to section 10(a) of the FAA must be serious; it "must amount to a denial of fundamental fairness of the arbitration proceeding." Areca, Inc. v. Oppenheimer & Co., Inc., 960 F.Supp. 52, 54–55 (S.D.N.Y. 1997) (citations omitted). To prove evident partiality of the arbitration panel, a party must demonstrate "more than just the 'appearance of bias.'" Id. at 56 (citations omitted).

A court may also vacate an award rendered "in manifest disregard of the law." Schwartz v. Merrill Lynch & Co., Inc., 665 F.3d 444, 451–52 (2d Cir. 2011) (internal quotation marks omitted). The "manifest disregard" test is rigorous. It requires "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law." Siegel v. Titan Indus. Corp., 779 F.2d 891, 892 (2d Cir.1985).

**B.   Waiver**

Many of Plaintiffs' challenges were raised for the first time after completing the entire NGFA arbitration process and receiving an unfavorable result. At every stage of the arbitration process, Plaintiffs forewent multiple opportunities to object to the specific arbitrators selected to hear their case and to the NGFA process in general. They repeatedly and affirmatively acknowledged acceptance of the NGFA procedures and arbitrators assigned to hear their claims. As noted in AAOT Foreign Econ. Ass'n (VO) Technostroyexport v. Int'l Dev. & Trade Servs., Inc., 139 F.3d 980, 982 (2d Cir. 1998), "[t]he settled law of this circuit precludes attacks on the qualifications of arbitrators on grounds previously known but not raised until after an award has been rendered. Where a party has knowledge of facts possibly indicating bias or partiality on the part of an arbitrator he cannot remain silent and later object to the award of the arbitrators on that

ground. His silence constitutes a waiver of the objection." AAOT, 139 F.3d at 982 (quotation marks omitted).

Plaintiffs also did not articulate any challenge to the validity of the arbitration agreement or the structure of the NGFA process itself in their motion to stay litigation. (Docket Nos. 10, 16 at 10.) Rather, they only challenged the question of whether arbitrability should be determined by an arbitrator and the scope of arbitration. (Docket No. 16 at 3-5.) Plaintiffs' contentions not previously raised are therefore considered waived. See Rai v. Barclays Capital Inc., 739 F. Supp. 2d 364, 374 (S.D.N.Y. 2010) aff'd, 456 Fed. Appx. 8 (2d Cir. 2011) ("[Plaintiff] had the opportunity to object, but knowingly and voluntarily consented to continuing with the arbitration. [He] cannot remain silent about the perceived partiality and then later object when the Panel reaches a decision he dislikes. His silence constitutes a waiver of his right to object on those grounds."); Vigorito v. UBS PaineWebber, Inc., 477 F. Supp. 2d 481, 487 (D. Conn. 2007), adhered to on reconsideration, 557 F. Supp. 2d 303 (D. Conn. 2008) ("Indeed, a disgruntled party cannot object after an award has been made . . . where the party has actual knowledge of the facts that form the basis of the objection.")

**C.   Bias**

Despite Plaintiffs' having waived their bias argument, this Court briefly addresses their contention. (Pl. Mem. at 3-6.)

Plaintiffs claim that the NFGA Arbitration and Appeals Committees were "inherently biased" on the grounds that Cargill "likely pays substantially higher dues than many other NGFA members," and that farmers have only prevailed in a small number of cases against Defendant before the NGFA. (Id. at 3-4.) Their arguments are identical to

those advanced by the plaintiff-farmer in Harter v. Iowa Grain Co., 220 F.3d 544 (7th Cir. 2000), in which the Seventh Circuit rejected the contention that "the NGFA [was] 'structurally biased' against farmers because its members include grain elevators." Harter, 220 F.3d at 554.[2] According to the plaintiff in that case, "he was 'placed in the unenviable position of having to attempt to persuade NGFA members that a widespread practice of the association's membership [was] illegal.'" Id. The Seventh Circuit observed that "Harter no doubt feels that the farmers' traditional adversaries were sitting in judgment over him," but, in dismissing the plaintiff's argument, reasoned that the Court had never found evident partiality "in settings where arbitrators and litigants were structural adversaries" because "disqualifying arbiters with experience in the business would eviscerate the goals of arbitration." Id. at 555. The Circuit Court reasoned that, "by virtue of their expertise in a field, arbitrators may have interests that overlap with the matter they are considering as arbitrators," and "[s]uch overlap has not amounted to *prima facie* partiality." Id. (citations omitted). "Thus, even a prior business association between an arbitrator and a party is not sufficient evidence of bias to vacate an award." Id. The Court contemplated the difficulty in courts applying a "structural bias" standard because it "would require disqualification, despite the practical reality that the arbitrators themselves would quite likely be impartial." Id. The Harter court pointedly concluded that "precedent in this circuit and others, as well as the broad policy goals served by

---

[2] Similar to Plaintiffs' arguments here, the Harter plaintiff argued that the defendant paid more than $26,000 in dues annually to the NGFA, that a significant portion of NGFA members have written hedge-to-arrive contracts, and that NGFA arbitration rules do not disqualify arbitrators who have such contracts, and that the NGFA arbitrated fewer than 20 cases involving farmers, vindicating farmers only twice. Id. at 556.

arbitration, require us to reject Harter's argument of 'structural bias' in the NGFA. This issue is no longer open." Id. at 556.

As previously mentioned, although a party seeking *vacatur* must prove evident partiality by showing "something more than the mere appearance of bias," Morelite Constr. Corp. v. N.Y.C. Dist. Council Carpenters Benefit Funds, 748 F.2d 79, 83 (2d Cir. 1984), "[p]roof of actual bias is not required." Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co., 668 F.3d 60, 72 (2d Cir. 2012). Rather, "partiality can be inferred 'from objective facts inconsistent with impartiality.'" Id. (quoting Pitta v. Hotel Ass'n of N.Y.C., Inc., 806 F.2d 419, 423 n. 2 (2d Cir. 1986)). A showing of evident partiality must be direct and not speculative. See Sanford Home for Adults v. Local 6, IFHP, 665 F.Supp. 312, 320 (S.D.N.Y.1987). Typically,

> [P]artiality is alleged on the grounds of conduct occurring external to the arbitration itself, such as preexisting relationships between the arbitrator and one party, or statements and conduct that imply bias. "[A]dverse rulings alone rarely evidence partiality." Scandinavian, 668 F.3d at 75. Absent objective indicators of bias, an arbitrator's "consistent[ ] reli[ance] on evidence and reach[ing] conclusions favorable" to one party "does not establish evident partiality." Bell Aerospace Co. Div. of Textron v. Local 516, Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW), 500 F.2d 921, 923 (2d Cir. 1974).

Application of Ballabon v. Straight Path IP Grp., Inc., No. 15-CV-5016, 2015 WL 6965162, at *7 (S.D.N.Y. Nov. 10, 2015) (some citations omitted).

Here, Plaintiffs allege that Cargill, being a multi-billion dollar corporation, likely pays substantially higher dues than many other NGFA members and thus curries favor with the NGFA in arbitration proceedings. (Pl. Mem. at 5.) Yet this is exactly the type of

12

speculation that has been repeatedly held not to support a finding of impermissible bias. According to Plaintiffs' calculations, farmers have prevailed in cases against only 17% of reported NGFA arbitrations. This is insufficient to establish evident partiality under the FAA. See, e.g., Harter, 220 F.3d at 556; see generally Bell Aerospace, 500 F.2d at 923. Finally, Plaintiffs claim that Cargill's Chairman and CEO was the keynote speaker at the NGFA's annual convention in 2011, which constitutes a business relationship indicative of inherent bias. This Court cannot agree. Plaintiffs do not allege that any specific arbitrator on either panel had a direct bias against them, nor did they object to any of the individuals appointed by the NGFA to hear their claims. (Szanyi Decl., ¶¶ 14-15, 25-31, 38-40.) Plaintiffs' argument under § 10(a)(2) of the FAA must fail.

**D.    Misconduct**

Plaintiffs' next argument arises under 9 U.S.C. § 10(a)(3), which allows a court to set aside an arbitration award "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced . . . ." Id.

At oral argument before Magistrate Judge Scott on August 6, 2015, as well as in their arbitration appeal, Plaintiffs emphasized that their primary challenge was to the NGFA panels' competence to hear a personal injury matter. (Docket No. 32-3 at 137-142, No. 32-4 at 77-78, No. 41.) In support of their contention, they rely on a statement by the initial arbitration panel indicating that the case was "not a typical dispute," and that the Appeals Committee called the case "a complex matter." (Pl. Mem. at 6-7.) They also cite to a list of approximately 246 cases decided by the NGFA, and point out that

none involved a personal injury issue. (Plaintiffs Ex. AA, Docket No. 32-4.)[3] This point warrants little discussion. This Court previously held that personal injury claims are subject to arbitration under New York law and Plaintiffs' claims were arbitrable. (Docket No. 16 at 5-10.) Moreover, the Seventh Circuit rejected a similar argument in Harter, 220 F.3d at 553 (7th Cir. 2000), finding "implausible" a plaintiff-farmer's motion to vacate the arbitration award on the basis that parties did not intend the NGFA to arbitrate the claim simply because it had not previously arbitrated claims of fraud or misrepresentation before. Id. at 553.

Plaintiffs also claim that both the initial Arbitration Committee as well as the Appeals Committee failed to render expeditious decisions. (Pl. Mem. at 8.) In support of their position, they submit the NGFA's arbitration literature, which states that the arbitration committees "endeavor to decide cases within 30 days after the receipt of papers and documentary evidence pertaining to the case. See http://www.ngfa.org/trade-rules-arbitration/arbitration/ (last accessed 1/11/2016). In this case, it took the initial arbitration panel one year to issue a decision and the appeals panel did not issue a decision until one year and seven months after Plaintiffs submitted their notice of appeal. (Id. at 9.) Plaintiffs do not cite any legal authority standing for the proposition that an arbitration award can be vacated based on the time it takes for an arbitration panel to render a decision, nor do they identify any prejudice that occurred as a result of the delay. (Pl. Mem. at 9-10.) Moreover, Plaintiffs acknowledge that Walter Van Buren's health issues occasioned a five-month delay in the appeals process. (Id. at

---

[3] While it is true that the majority of the arbitrated cases provided by Plaintiffs arose under breach of contract, a handful of the cited decisions did involve issues such as product failure/liability and negligence. (Pl. Ex. AA., Docket No. 32-4.)

9.) There is therefore no basis to set aside the arbitration award based on the NGFA panels' delays in issuing their decisions.

**E.  Manifest Disregard**

Finally, Plaintiffs claim that the NGFA arbitrators on both Committees had no legal basis for their decisions and thus acted in manifest disregard of the law. (Pl. Mem. at 10.)

The Second Circuit has made clear that review of an arbitration award for manifest disregard of the law is "severely limited" and "to modify or vacate an award on this ground, a court must find both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." Halligan v. Piper Jaffray, Inc., 148 F.3d 197, 202 (2d Cir. 1998) (internal quotations omitted); see also Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 389–91 (2d Cir. 2003).

To this end, Plaintiffs raise three arguments: the arbitration panel was required to apply the *falsus in uno, falsus in omnibus* doctrine to the testimony of two witnesses; that the expert opinion of a Cargill employee was improperly admitted; and that the Appeals Committee should have applied a *res ipsa loquitur* analysis in determining Plaintiffs' appeal. (Pl. Mem. at 10-12.) This Court deals with each contention in turn.

First, Plaintiffs claim that the statements made by Cargill representatives, Ms. Snyder and Mr. Flowers, were contradicted by the Sheriff's Incident Report taken the day of the accident and thus should have required the arbitration panel to completely

15

discount their credibility pursuant to the doctrine of *falsus in uno*.[4] Specifically, Snyder and Flowers stated that they were told that Walter Van Buren fell off of a stack of baled hay, whereas the witness statements and Incident Report, as well as the nature of the injuries, indicated that the hay stacks fell on top of Walter Van Buren. (Pl. Mem. at 11.) Fatal to Plaintiffs' claim is that there is no evidence to support a conclusion that the witnesses' statements were willfully false. Notably, the arbitration panel noted that "the sequence of events surrounding the accident . . . were at best murky as they were presented by the Plaintiffs. The arbitrators agreed that it was likely the hay fell on him; however, what caused the hay to collapse was entirely unclear." (Pl. Ex. K, Docket No. 32-3.) Thus, even if the arbitrators determined with certainty that Plaintiffs' characterization of the accident—that the hay fell *on top of* Walter Van Buren—was different from what Snyder and Flowers recalled they were told (that Walter Van Buren fell *off of* the hay stacks), that does not render the testimony willfully false. In any event, *falsus in uno* merely permits, but does not require, a finder of fact to disregard the entirety of the testimony.[5]

Second, Plaintiffs attack the affidavit testimony of Cargill's scientist, Ms. Plaisance, and argue that the opinion of their third-party scientist should have been

---

[4] The doctrine of *falsus in uno* allows that "if [a fact finder] find[s] that a witness willfully falsely testified to a material fact, [a fact finder is] privileged to reject all his testimony, or . . . elect to . . . believe part of it and accept that part of it which appealed to [a fact finder's] reason, or which was corroborated by other credible evidence and reject the rest." United States v. Foster, 9 F.R.D. 367, 389 (S.D.N.Y. 1949); see also United States v. Weinstein, 452 F.2d 704, 71314 (2d Cir. 1971).

[5] It should also be noted that the Second Circuit Court of Appeals disfavors the concept of *falsus in uno, falsus in omnibus*. See United States v. Weinstein, 452 F.2d 704, 713 (2d Cir. 1971) ("The maxim "*Falsus in uno, falsus in omnibus*" has been well said to be itself "absolutely false as a maxim of life." (citation omitted).)

accepted instead.[6] (Pl. Mem. at 11.) It is well-settled, however, that a petition to vacate "is not an occasion for *de novo* review of an arbitral award." Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004). "[A] court may not review the weight the arbitration panel accorded to conflicting evidence." Sobol v. Kidder, Peabody & Co., 49 F. Supp. 2d 208, 217 (S.D.N.Y. 1999). Plaintiffs, who clearly disagree with the Arbitration and Appeals Committees' decision to admit Plaisance's opinion, do not set forth a valid basis to vacate the arbitration award under the manifest disregard standard, because it is well-settled that disregard of facts or evidence is not a basis for *vacatur*. See Sea Shipping Inc. v. Half Moon Shipping, LLC, 848 F.Supp. 2d 448, 459 (S.D.N.Y. 2012) (citing Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp., 548 F.3d 85, 91 (2d Cir. 2008), rev'd on other grounds, 559 U.S. 662 (2010)).

Finally, Plaintiffs ask the Court to apply a *res ipsa loquitor* analysis to their claims. (Pl. Mem. at 12.) Plaintiffs raised this argument before the Appeals Committee, averring that there was no other credible explanation for the accident other than the inappropriate and negligent instructions by Cargill's employees as to how to apply the product. (Pl. Ex. FF, Docket No. 32-4 at 39.)

*Res ipsa loquitor* is a doctrine "that allows an inference of negligence [to] be drawn solely from the happening of the accident upon the theory that certain occurrences contain within themselves a sufficient basis for an inference of negligence." County of Erie v. Colgan Air, Inc., 711 F.3d 147, 149 n.1 (2d Cir. 2013). The doctrine applies when three essential elements are met: (1) the event was of a kind which

---

[6] The two scientists offered differing opinions on whether the application of Bale Green could cause structural weaknesses in baled hay. (Pl. Exs. DD & EE, Docket No. 32-4.)

ordinarily does not occur in the absence of someone's negligence; (2) it was caused by an agency or instrumentality within the exclusive control of the defendant; (3) it was not due to any voluntary action or contribution on the part of the plaintiff. Dermatossian v. NYC Transit Auth., 67 N.Y.2d 219, 226 (1986).

Simply stated, this Court fails to see how *res ipsa loquitor* applies in the instant case. The Bale Green that allegedly caused or contributed to Walter Van Buren's injury was in his own exclusive control, not in the exclusive control of Defendant. The Appeals Committee accordingly found that there was "ample evidence of potential other contributing causes," and therefore it could not conclude, "based upon a preponderance of the evidence, that the defendant's product or conduct resulted in the plaintiffs' losses related to personal injury or quality loss." (Pl. Ex. Y, Docket No. 32-3 at 186.) Thus, the Appeals Committee's disregard of the doctrine itself and/or its refusal to apply *res ipsa loquitor* to Plaintiffs' claims cannot be said to meet the exacting standard of manifest disregard of the law.

**F.   Unconscionability**

Plaintiffs conclude their motion to vacate by arguing that the NGFA arbitration process is cost-prohibitive. (Pl. Mem. at 13.) Specifically, they allege that the NGFA's required arbitration fees imposed "significant economic hardship on the Claimants." (Pl. Mem. at 13.) Those fees, comprised of $5,900 for an arbitration service fee, $11,800 for the appeal, $2,156.50 for Cargill's judgment, and $12,500 for the oral argument fee, totaled $32,356.50. (Id. at 13-15.)

An arbitration clause that imposes too heavy a financial burden may be unconscionable. See Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 90 (2000).

The Supreme Court has recognized that "the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum." Green Tree, 531 U.S. at 90.  The Court also cautioned, however, that the mere "risk" of prohibitive costs "is too speculative to justify the invalidation of an arbitration agreement" and that "a party seek[ing] to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive . . .  bears the burden of showing the likelihood of incurring such costs." Id. at 91.

Plaintiffs' attempt to demonstrate that the arbitration proceedings were prohibitively expensive falls short. They do not allege, much less submit any evidence of prejudice resulting from the arbitration fees. Plaintiffs also do not assert that they could not afford the fees, and they identify no action that they could not pursue due to the arbitration costs. This Court is also not persuaded by Plaintiffs' argument that a federal court proceeding would have been more economical because they have submitted no evidence regarding their expected costs in litigation for these purposes other than court filing fees. (Id. at 16.) Plaintiffs overlook the other expenses that are typically incurred in personal injury cases, such as transcript fees, expert witnesses, and attorney fees. Plaintiffs have therefore not established that the arbitration fees rendered the entire agreement unenforceable due to unconscionability.

### IV. CONCLUSION

Having reviewed the record, this Court finds that the award must be confirmed, because there is no evidence that the award was made in manifest disregard of the law and no evidence to support any of the grounds for *vacatur* provided in the FAA.

Accordingly, Defendant's motion to confirm the arbitration award is granted. Plaintiffs' motion to vacate the arbitration award is denied.

## V.  ORDERS

IT HEREBY IS ORDERED, that Plaintiffs' motion to vacate the arbitration award (Docket No. 32) is DENIED and Defendant's cross-motion to confirm the award (Docket No. 37) is GRANTED.

FURTHER, that this Court's Referral Order (Docket No. 33) is VACATED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:   January 18, 2016
        Buffalo, New York

                                                                       /s/William M. Skretny
                                                                         WILLIAM M. SKRETNY
                                                                 United States District Judge